# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GEORGE CHIDEBE UDEOZOR     *
                                 *

      Petitioner               *

                                    *    **Civil No.:**     **PJM 09-3172**

**v.**                                       *    **Crim. No.:**    **PJM 03-0470**

                                    *

**UNITED STATES OF AMERICA**      *

                                    *

      Respondent            *

## MEMORANDUM OPINION

George Chidebe Udeozor, proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 210]. Having considered Udeozor's Motion and the Government's Opposition thereto, the Court **DENIES** the Motion.[1]

## I.

On November 12, 2003, a federal grand jury returned a three-count superseding indictment against Udeozor and his wife, charging both with: (1) conspiracy in violation of 18 U.S.C. § 371; (2) involuntary servitude in violation of 18 U.S.C. § 1584; and (3) harboring an alien for financial gain in violation of 8 U.S.C. § 1324. Specifically, the Government alleged that Udeozor and his wife had fraudulently brought a 14-year-old Nigerian girl into the United States, used her—without providing compensation—as a domestic worker and child care provider, and subjected her to verbal, physical, and sexual abuse, all over a period of approximately five years. Although the events at issue took place primarily in Montgomery County, Maryland, at the time of his indictment Udeozor, who had become estranged from his wife, was living in Nigeria.

---

[1] Udeozor has also filed a Motion to Amend Pleading and to Clarify Initial Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 223], in which he asks the Court to amend his Motion to Vacate and consider clarifications of arguments asserted in that Motion. Because the Court will consider all of Udeozor's arguments in tandem, including those asserted in the Motion to Amend, the Motion to Amend is **MOOT**.

During Udeozor's extended absence from the United States, his wife was tried by jury, found guilty of conspiracy and harboring an alien for financial gain, and sentenced to 87 months in prison.

Following lengthy extradition proceedings lasting several years, Udeozor was brought back to the United States. Ultimately, pursuant to a written plea agreement with the Government, Udeozor pled guilty to a single count of involuntary servitude in violation of 18 U.S.C. § 1584. During his plea hearing, held in this Court on July 16, 2008, Udeozor represented to the Court under oath that he was "very" satisfied with the legal services provided by defense counsel, that he fully understood the Government's case against him, that he fully understood his plea agreement with the Government, that he agreed with the statement of facts proffered by the Government at the hearing, that he understood that he would have to pay restitution to his victim, that he fully understood the sentencing guidelines, that his decision to enter into a plea agreement was entirely voluntary, and that there was nothing else about the proceedings that he did not fully understand.

On October 7, 2008, during Udeozor's sentencing hearing, this Court found that Udeozor had sexually abused his victim,[2] and determined that a two-level enhancement of Udeozor's offense level under the federal sentencing guidelines was appropriate because Udeozor had inflicted a serious bodily injury on the victim. Thereafter, the Court sentenced Udeozor to 97 months in prison followed by 36 months of supervised release, and ordered him to pay restitution to the victim in the amount of $112,249.60.

---

[2] Indeed, the statement of facts proffered by the Government at Udeozor's plea hearing—and to which Udeozor stipulated—stated that, from "approximately the fall of 1997, when the victim was just 15 years old, until the time he left the United States in late 1999, George Udeozor had sexual intercourse with the victim in [his] home."

Although the terms of Udeozor's plea agreement precluded him from appealing any sentence imposed by the Court at or below the sentencing guideline range for an offense level of 28, and despite the fact that Udeozor's sentence did not exceed that range, he nevertheless filed an appeal on October 28, 2008. Subsequently, pursuant to advice from his counsel, Udeozor withdrew his appeal, which the Fourth Circuit formally dismissed on March 13, 2009. Ultimately, on November 30, 2009, Udeozor filed the instant Motion to Vacate, pursuant to 28 U.S.C. § 2255.

## II.

In his Motion, Udeozor argues that defense counsel's performance was deficient in violation of the Sixth Amendment to the United States Constitution for a myriad of reasons. Specifically, his Motion asserts that: (1) counsel failed to perform an adequate pre-trial investigation of Udeozor's claims that the victim and her family "were taking advantage of an unfortunate situation to pursue financial gain to the detriment of" Udeozor and his family; (2) Udeozor never would have pled guilty if counsel had explained to him that he was subject to certain enhancement provisions under the federal sentencing guidelines; (3) counsel improperly induced him into pleading guilty by informing him that, given his lack of a criminal history, the Court would likely sentence him at the lower end of the sentencing guidelines if he were to plead guilty; (4) counsel failed to meaningfully discuss with Udeozor the Government's discovery materials and other aspects of the Government's case against him; (5) counsel did not meaningfully discuss with Udeozor the fact that the Court might order him to pay restitution to the victim; (6) counsel was ineffective in not calling certain witnesses on Udeozor's behalf; (7) counsel was ineffective in failing to move to withdraw Udeozor's guilty plea; (8) counsel failed to file a motion to suppress telephone conversations between Udeozor and the victim recorded by

the Government; and (9) counsel improperly induced Udeozor to withdraw his appeal to the Fourth Circuit.

In response, the Government argues that: (1) most of Udeozor's assertions are belied by statements he made under oath during his plea colloquy; (2) none of counsel's actions fell below an objective standard of reasonableness within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984); and (3) in any event, Udeozor has not shown that, but for the alleged deficiencies in his counsel's performance, there is a reasonable probability that he would not have pled guilty and would have insisted on proceeding to trial, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III.

A claim of ineffective assistance of counsel in violation of a habeas petitioner's Sixth Amendment rights is examined under the familiar two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*'s first prong, a petitioner must "show that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A petitioner may make such a showing by proving that his counsel "fell below an objective standard of reasonableness" "under prevailing professional norms." *Id.* at 687-88; *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). In other words, the performance of petitioner's counsel must have been outside "the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (citations omitted). Under this prong, the law presumes that a defense attorney was competent, and "[j]udicial scrutiny of counsel's performance must be highly deferential [because i]t is all too tempting for a defendant

to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland*, 466 U.S. at 689.

Generally speaking, a habeas petitioner is bound by the representations he made under oath during a plea colloquy. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). Thus, absent clear and convincing evidence showing that his sworn representations were somehow inaccurate, untruthful, or involuntary, a petitioner cannot satisfy the first prong of the *Strickland* standard merely by making claims of ineffective assistance that are plainly belied by representations made to the Court during his plea colloquy. *See id.*; *see also Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001).

In any event, even if a habeas petitioner succeeds in showing that his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms," *Strickland*, 466 U.S. at 687-88, he must still show, pursuant to the second prong of the *Strickland* analysis, that his counsel's "deficient performance prejudiced the defense." *Id.* at 687. Thus, where the defendant pled guilty, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## IV.

Each of Udeozor's arguments that his counsel was ineffective fails to satisfy the *Strickland* standard. For one, most of his arguments are flatly contradicted by his plea hearing, during which he expressed satisfaction with his counsel and indicated that he fully understood the Government's case against him and the contents of his plea agreement. As for his remaining arguments, Udeozor cannot demonstrate that his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 687-

88. Moreover, even assuming, *arguendo*, that Udeozor's counsel's performance was in some respects objectively unreasonable, Udeozor cannot show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## A.

Several of Udeozor's arguments—that his counsel failed to perform an adequate pre-trial investigation,[3] that counsel did not adequately explain possible enhancements under the sentencing guidelines, that counsel improperly induced him into pleading guilty, that counsel failed to meaningfully explain the Government's case against him, and that counsel did not meaningfully discuss the possibility of court-ordered restitution—are all belied by the sworn statements Udeozor made during his plea hearing. As noted *supra*, Udeozor represented to the Court during his plea colloquy that he was "very" satisfied with his counsel's performance, that he understood the sentencing guidelines, that his decision to enter into a plea agreement was entirely voluntary, that he fully understood the Government's case against him, and that he understood that he would have to pay restitution to his victim. In light of these representations—and in the absence of clear and convincing evidence that they were somehow inaccurate, untruthful, or involuntary—Udeozor cannot now construct a claim of ineffective assistance of counsel merely by making assertions that contradict his sworn statements to the Court. *See Fields*, 956 F.2d at 1299; *Beck*, 261 F.3d at 396.

## B.

---

[3] The Court also notes here that, even assuming, *arguendo*, that defense counsel did not conduct a detailed independent investigation of the facts underlying Udeozor's case, such an omission does not necessarily constitute objectively unreasonable performance in light of the fact that counsel had at his disposal the publicly-available transcripts from the trial of Udeozor's wife. Udeozor's wife was found guilty by a jury in November 2004, nearly four years before Udeozor's guilty plea and sentencing.

Udeozor's remaining arguments—that counsel was ineffective in failing to call witnesses on Udeozor's behalf, that counsel should have moved to withdraw Udeozor's guilty plea, that counsel should have filed a motion to suppress telephone conversations recorded by the Government, and that counsel improperly induced Udeozor to withdraw his appeal to the Fourth Circuit—plainly do not establish that his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 687-88.

The first of these remaining arguments—that counsel was ineffective in not calling witnesses on Udeozor's behalf—is contradicted by the record, which shows that defense counsel in fact did call witnesses on Udeozor's behalf during his sentencing hearing. On the information available—Udeozor's mere assertion that counsel failed to call witnesses, opposed by the fact that witnesses were indeed called at sentencing—the Court cannot conclude that counsel somehow erred in failing to call witnesses.

As for the second of the remaining arguments—that counsel should have moved to withdraw Udeozor's guilty plea—Udeozor offers nothing that would permit the Court to conclude that such a motion would have been proper under the Federal Rules of Criminal Procedure. Pursuant to Rule 11, a criminal defendant who has pled guilty may not withdraw a plea after sentencing, Fed. R. Crim. P. 11(e), and may withdraw a plea prior to sentencing only upon a showing of "a fair and just reason for requesting the withdrawal," Fed. R. Crim. P. 11(d). Here, where Udeozor has not articulated "a fair and just reason" that might have justified the pre-sentencing withdrawal of his guilty plea, the Court cannot conclude that counsel's failure to make such a request on his behalf was objectively unreasonable.

The third of Udeozor's remaining arguments—that counsel should have filed a motion to suppress telephone conversations recorded by the Government—is similarly unavailing. In his Motion to Vacate, Udeozor asserts that the Government's recording of telephone conversations between Udeozor and his victim was illegal. That assertion, however, would appear to be entirely without merit, as federal law plainly permits the Government to intercept and record a telephone conversation, provided that at least one of the parties to the conversation gives prior consent to the recording. *See* 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."). Here, where the victim consented to the recordings, and where counsel thus would not have been able to make a meritorious argument in support of a motion to suppress, Udeozor cannot maintain that failure to file such a motion constituted performance "below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 687-88.

The fourth and last of Udeozor's remaining arguments—that counsel improperly induced him to withdraw his appeal to the Fourth Circuit—fails for similar reasons. As noted *supra*, the terms of Udeozor's plea agreement precluded him from appealing any sentence imposed by the Court at or below the sentencing guideline range for an offense level of 28. Because Udeozor's sentence did not exceed that range, any appeal likely would have been summarily dismissed by the Fourth Circuit. *See United States v. Blick*, 408 F.3d 162, 173 (4th Cir. 2005) (refusing to consider a criminal defendant's appeal of issues falling within the scope of a valid appeal waiver in a plea agreement). Under those circumstances, any efforts by counsel to encourage Udeozor to

withdraw his appeal cannot be considered objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 687-88.

## C.

In any event, even assuming, *arguendo*, that his counsel's performance was somehow objectively unreasonable, Udeozor simply has not shown that "there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (emphasis added). Upon his return to the United States in 2008 after lengthy extradition proceedings, Udeozor faced a prosecution reinforced by a considerable body of evidence against him, as demonstrated in part by his wife's conviction after a trial by jury in 2004, and also by recorded telephone conversations in which Udeozor admitted that he had had sexual intercourse with the victim when she was still a teenager. Given that reality, and given that most of the assertions of ineffective assistance of counsel that Udeozor makes either are contradicted by his sworn representations to the Court or maintain that counsel should have taken actions that almost certainly would not have met with success, the Court cannot conclude that there is a reasonable probability that, had counsel performed differently in some respects, Udeozor would have chosen to proceed to trial and face likely conviction on all three of the counts with which he was charged—as opposed to the one count to which he ultimately pled guilty. Accordingly, the Court concludes that, even assuming—generously—that Udeozor has satisfied the first prong of the *Strickland* standard, his claims of ineffective assistance surely fail on the second prong.

## V.

Rule 11(a) of the Rules Governing § 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court has considered the record and finds that Udeozor has not made the requisite showing here. Accordingly, the Court denies a certificate of appealability.

## VI.

For the foregoing reasons, Udeozor's Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 210] is **DENIED**. A certificate of appealability is likewise **DENIED**. Udeozor's Motion to Amend Pleading and to Clarify Initial Motion to Vacate, Set Aside, or Correct Sentence [Paper No. 223] is **MOOT**.

A separate Order will **ISSUE**.

_____
                    **/s/**
            **PETER J. MESSITTE**
    **UNITED STATES DISTRICT JUDGE**

**November 29, 2010**